## WISDOM v. GWYNN.    (No. 2806.)

Court of Civil Appeals of Texas.    Amarillo.
May 4, 1927.

Rehearing Denied May 18, 1927.

1. Mines and minerals ⟞78(7)—Evidence in lessor's suit for breach of oil lease held not to establish rescission, as matter of law.

Evidence that lessor regarded oil lease as terminated by force of its terms on lessee's failure to drill within time limited, and refused to recognize right to drill thereafter, did not, as matter of law, establish rescission, and court erred in refusing to submit issue in lessor's damage suit for breach.

2. Mines and minerals ⟞78(7)—Finding that lessee under oil lease did not tender performance deprived him of right to minimize damages in suit for breach.

In lessor's suit for damages for breach of oil lease requiring drilling within 30 days, a jury finding, which was not attacked, that the lessee never in good faith tendered performance deprived him of right to minimize damages.

3. Exceptions, bill of ⟞20—Special issue, indorsed "Refused" by judge, held "bill of exception" both to refusal and to finding of fact involved.

Special issue, whether lessor declared lease forfeited, indorsed "Refused" and signed by the court, constituted a "bill of exception" both to the refusal to submit the issue and to the finding of fact involved in the refusal that evidence showed declaration of forfeiture.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bill of Exceptions.]

4. Election of remedies ⟞12—Lessor's acts, based on erroneous interpretation of lease as canceled, would not release lessee from liability for breach.

Lessor's acts showing interpretation of oil lease as canceled by its terms, though in fact it could be canceled only by written release or judgment, would not release lessee or estop lessor from asserting against him liability for damages for failure to comply with his covenant to commence drilling within 30 days.

5. Election of remedies ⟞7(1)—Decisive action, with knowledge of rights and facts, determines "election" of inconsistent remedies.

Any decisive action of party, with knowledge of his rights and the facts indicating intention to pursue one remedy rather than the other, determines his "election" in case of inconsistent

---

⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

remedies, but there must, in fact, be coexisting remedies between which he has a right to elect.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Election.]

6. Election of remedies ⊚⟞7(1)—Lessor's refusal to permit lessees to drill after expiration of stipulated time held not "election" of remedies, precluding recovery of cost of well.

Lessor's refusal to permit lessees to drill well after time stipulated in lease, within which well should be drilled, *held* not "election" of remedies, precluding lessor's recovery of cost of well.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by Mrs. Belle Wisdom against P. F. Gwynn. From the judgment rendered, plaintiff appeals. Reversed and rendered.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellant.

Kenley, Dawson & Holliday, of Wichita Falls, for appellee.

RANDOLPH, J. Appellant brought this suit against appellee in the district court of Wichita county to recover damages for breach of contract. The trial was had before a jury, and on the verdict of the jury being returned into court, the trial court rendered judgment for appellant for the sum of $1,450, being the amount of the value of the oil and gas lease as of October 30, 1925, less the sum of $50, the value of said lease on December 1, 1925. From this judgment appeal has been taken to this court by appellant.

The oil and gas lease was in the customary form of such leases, and the provision therein expressly relied on by appellant to sustain her cause of action is as follows:

"As a part of the consideration of this lease, the grantee covenants to and with the grantor that on or before 30 days from this date he will commence the drilling of a well for oil on the above described tract of land, and with due and reasonable diligence thereafter continue the drilling of said well until it reaches a depth of 1,400 feet, unless oil or gas in paying quantities is discovered at a lesser depth."

The contract bears date of October 30, 1925.

The court submitted to the jury, and the jury answered as below indicated the following issues:

"Special Issue No. 1. What would it reasonably have cost the plaintiff, on or about the 30th day of November, 1925, to have drilled a well for oil and gas on the 10-acre tract of land in question to a depth of 1,400 feet? Answer by stating dollars and cents. Answer: $6,300.

"Special Issue No. 2. What would it reasonably have cost the defendant, on or about the 30th day of November, 1925, to have drilled a well for oil and gas on the 10-acre tract of land in question, to a depth of 1,400 feet? Answer by stating the dollars and cents. Answer: $5,300.

"Special Issue No. 3. What was the reasonable market value of the lease on the 10 acres in question on or about the 30th day of October, 1925? Answer: $150 per acre."

And the further unnumbered issue:

"Did the defendant, in good faith, offer to drill the well on the 10-acre lease in question after December 1, 1925? Answer: No."

The court also submitted to the jury the following special issues requested by the defendant:

"(b) What was the value of the 10-acre lease in question, if any, after the completion of the Burns well, which was completed on or about November 15, 1925? Answer: $5 per acre.

"(c) What was the value, if any, of the 10-acre lease in question on or about December 1, 1925? Answer: $5 per acre."

Appellant submitted her case to this court upon two propositions, which are as follows:

"Proposition No. 1. The appellant contracted to and did execute to the appellee an oil and gas lease on a certain 10 acres of land, situated in Archer county, Tex., in consideration of the express obligation on the part of the appellee to commence the drilling of a well for oil and gas on said land within 30 days from the date of said lease, which obligation the appellee failed to carry out and thereby breached his contract, and the true measure of damages for this breach of the contract is the cost of the well. The trial court erred, therefore, in applying as the measure of damages in this case the value of the lease instead of the cost of the well, found by the jury to be the sum of $6,300.

"Proposition No. 2. Where, as in this case, the lease had been executed by the appellant to the appellee, and had been acknowledged by the appellant, and had been spread upon the records of the county by the appellee and no release executed by the appellee prior to the institution of said suit or release demanded by the appellant, and where the appellant instituted no suit to compel a cancellation of the lease, but, on the contrary, instituted a suit for damages for breach of the contract, the trial court erred in holding, as a matter of law, that appellant declared forfeited and terminated the lease contract in question."

We will consider these propositions in the reverse order to that in which they are presented.

Was the trial court authorized, as a matter of law, to conclude from the evidence before him that the appellant had rescinded the contract with appellee?

The trial court submitted the case to the jury, as stated above, upon special issues, and the appellee requested the following additional special issue to be given to the jury:

"Did or did not the plaintiff voluntarily declare the lease contract forfeited and terminated on the 10 acres in question on December 1, 1925,"

---

⊚⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

—which issue the court refused to submit to the jury and appended thereto the following notation, giving his reason for refusing same:

"It having been established by the uncontroverted evidence in this case that the plaintiff did declare forfeited and terminated the lease contract on the 10 acres of land in question between plaintiff and defendant on December 1, 1925, the trial court hereby finds as a fact the affirmative of said issue, and, because thereof refuses to submit to the jury the foregoing issue."

This was, in fact, the court's conclusion of law that the evidence established a rescission by appellant.

[1, 2] In the first place, we do not think that the evidence discloses without contradiction the appellant's rescission of the contract. There can be no question but that the appellant refused to recognize appellee's right to drill the well on the land after the date of the expiration of the time named in the contract in which the well was to have been drilled. However, the jury finding, which is not attacked, that the appellee never in good faith tendered performance, deprives him of any claim or right to minimize appellant's damages.

The evidence upon the question of the alleged rescission by appellant is as follows: On the 1st of December, 1925, appellant wrote to appellee the following letter:

"Kemp Hotel, Wichita Falls. Dec. 1, 1925.

"Mr. P. F. Gwynn, City National Bank Building, Wichita Falls, Texas—My dear Mr. Gwynn: I am very much disappointed that the lease on the 10 acres in the J. Ostane tract in Archer county has expired, and that no drilling upon the well was started within the 30 days given in the lease. As that was the only consideration for the lease, and I have been waiting here in the expectation each day that it would be started and that that would be tested, it is, as you may know, a very great disappointment.

"Yours very truly,        Belle Wisdom."

After writing the above letter, Mrs. Wisdom then placed the matter in the hands of her attorney, Mr. Leslie Humphrey. The following correspondence then occurred between Humphrey and appellee's attorneys:

"Judge R. O. Kenley, City—Dear Sir: In re Wisdom v. Gwynn. Mrs. Wisdom desires a definite answer from Mr. Gwynn as to what he is going to do in regard to paying her the compensation which he owes her for his breach of contract to drill a well on 10 acres of land leased by her to him as a consideration for the drilling of this well.

"She would be glad to have this information not later than Saturday of this week as she has advised me to begin an action against Mr. Gwynn for the breach of this contract in the event that he does not agree to compensate her for it. She does not, of course, recognize any right of his to drill the well after he has already

breached the contract and the terms of the lease has expired.

"Yours very truly,        Leslie Humphrey."

"Wichita Falls, Texas. December 11, 1925.

"Judge Leslie Humphrey, City. In re Wisdom v. Gwynn. In reply to yours of the 10th inst. addressed to me with regard to the controversy between above parties, I am authorized by Mr. Gwynn to reiterate to you and your client what he some days back personally offered to Mrs. Wisdom to do, and what I offered, in behalf of Mr. Gwynn, to you several days ago to do; that is, proceed at once and drill the well on the 10-acre tract of land in Archer county, Tex., as provided in the lease contract.

"Mr. Gwynn has been at all times and is now ready to drill said well in accordance with the terms, conditions, and provisions of said contract, and would have heretofore been drilling on said well but for the fact that Mrs. Wisdom advised him that she would not now permit him to drill it.

"Kindly advise if you and your client have changed your minds and will now permit Mr. Gwynn to drill said well, as he is anxious to drill the same.

"Let me hear from you at once, and oblige, yours very truly, Kenley, Dawson & Holliday, by Kenley."

"Judge R. O. Kenley, Harvey Snider Bldg., City—Dear Sir: Under a contract dated the 30th day of October, 1925, between Mrs. Bell Wisdom and Mr. P. F. Gwynn, she agreed to lease to Mr. Gwynn a certain 10-acre tract, and as a part of the consideration Mr. Gwynn covenanted and agreed that on or before 30 days from the date of the contract, he would commence the drilling of a well on said land, and with due and reasonable diligence continue the drilling of said well until it reached a depth of 1,400 feet, unless oil or gas in paying quantities was discovered at a lesser depth.

"At no time during the currency or term of this contract did Mrs. Wisdom, or myself, ever advise Mr. Gwynn or you that she would not permit the well to be drilled. I have no recollection of your proffer to me on the part of Mr. Gwynn to drill the well.

"Suffice to say that Mr. Gwynn had already breached his contract, and the contract does not permit him to go on the lease and drill the well, and Mrs. Wisdom merely expects to be bound herself by the terms of the contract and that Mr. Gwynn, at least, should assume the same responsibility, and she will not consent to make a new agreement now by the terms of which Mr. Gwynn may relieve himself of the obligations in the contract dated October 30, 1925, by drilling a well on this tract, and I beg to advise that I am instructed to institute a suit against Mr. Gwynn for the damages which Mrs. Wisdom has incurred by reason of the breach of this contract on the part of Mr. Gwynn.

"Yours very truly,        Leslie Humphrey."

Appellant, while on the stand, testified, in part, as follows:

"Mr. Gwynn did not carry out the terms of this lease contract whereby he agreed to begin a well within 30 days from the date of the lease, and drill this well to a depth of 1,400 feet. I made an investigation. * * *

"On December 1st, I wrote him this letter and

referred to the lease that is under consideration in that letter. (Referring to above letter.) As to whether I promptly terminated that lease, I suppose it was terminated; I did not terminate the lease; it had expired of its own terms. As to my purpose in writing the letter, I knew that it had expired. * * *

"As soon as he let it expire when he got to wanting to know about it—after getting my letter he called me over the phone about putting a well further on, and I did not want to talk to him over the phone, and I told him I did not want to talk to him; that was several days afterwards, because I had taken it up with my attorney, I wanted to get away. I wrote the letter before taking the matter up with my attorney; after writing the letter, it was a day or so before I went to the attorney.

"As to whether after I wrote the letter I considered that Mr. Gwynn had any more interest in the lease, naturally not; why should he? He did not keep his contract. He had no further interest in the lease. * * *

"As to whether or not I terminated the lease immediately after the 30 days were up—called it off at the end of 30 days and terminated the lease—the lease terminated according to its own terms. I suppose my contract rendered it at an end. We understood the contract, and he understood it as well as I did. I thought it was at an end. * * *

"I feared that after the lease had expired, and he did not go on before it expired, and he did not interest himself in it when he had a contract, that he would not give it the attention. * * *

"I consulted Mr. Humphrey a day or so after I wrote the letter of December 1, 1925. I left the matter in his hand—yes; anything done by him after that was as my attorney."

The one fact that appears pre-eminent from this evidence is that appellant was acting upon her view of that provision of the contract requiring performance within 30 days, and that she had in mind that the contract, by its terms, provided for its termination within the 30 days. Certainly this evidence did not authorize the trial court to conclude, as a matter of law, that appellant had rescinded the contract.

The action of the trial court in refusing to submit the issue here in question, and in making the finding that he did, was tantamount to instructing the jury peremptorily upon such question, and, for the reasons stated above, such refusal was error.

[3] Appellee contends that, inasmuch as the trial court made the finding of fact upon the question of rescission and the appellant took no exception to such finding, the appellant cannot now raise the question. The question involves not only the trial court's finding of fact, but it also involves the refusal to give a special issue. It naturally follows that if the court erred in refusing to submit the issue, he also erred in such finding. The special issue, having been indorsed "Refused" and duly signed by the court, constituted it a bill of exception. Walker v. Hirsch-Cooperage Co. (Tex. Com. App.) 236

S. W. 710, 713. Consequently, the action of the court was duly excepted to.

The question as to whether or not the appellant rescinded her contract, under the facts as shown, is to be determined, as a matter of law, by the answer to the question, did the appellant exercise an election of remedies, and was she bound by such election?

The evidence, as stated, indicated to our minds that appellant was of the opinion that the contract, by its terms, furnished its own termination; she did not do anything to declare a forfeiture of the appellee's rights therein, or to rescind the contract, but simply asserted what she conceived to be the fact, that the appellee having failed to perform the contract within the 30 days provided therein, his right to go on her land and drill the well, was at an end. This was evidenced further by the fact that she brought no suit to cancel or rescind the contract, but her petition bases her cause of action upon the breach thereof.

But, be that as it may, should we be wrong in our holding in this respect, then there is another theory of the case which entitles the plaintiff to recover the consideration named in the contract.

[4] The contract could only be rescinded by a written instrument, executed for the purpose of releasing appellant or by a judgment canceling the contract. This being true, whatever her acts or declarations showed as to her interpretation of the contract could not and would not operate as a matter of law to release appellee from his obligations under such contract. The appellant having no right to declare a rescission, such as is charged by appellee, certainly her election to pursue a remedy to which she had no legal right would in no wise bind her or estop her from suing for the consideration named in the contract, upon proof of its breach by appellee.

[5] The rule is laid down in 20 C. J. 19:

"It may be stated as a general rule that any decisive act of a party, with knowledge of his rights and of the facts, indicating an intent to pursue one remedy rather than the other, determines his election in case of conflict and inconsistent remedies. To the proper application of this rule, three things are essential: (1) There must be in fact two or more coexisting remedies between which the party has the right to elect; (2) the remedies thus open to him must be inconsistent; and (3) he must by actually bringing his action, or by some other decisive act, with knowledge of the facts, indicate his choice between these inconsistent remedies."

[6] It is further held that where a party makes a mistake as to the legal effect of a written instrument and dismisses the action, or where any such case, on prosecution to judgment, is defeated because of such error, such acts do not constitute an election of remedies, so as to preclude a subsequent action to reform the instrument. 20 C. J. p. 26.

Our Supreme Court has held in the case

of Stone Cattle & Pasture Co. v. Boon, 73 Tex. 548, 11 S. W. 544, that the filing of a suit and asking for a decree of foreclosure is not such an election of remedies as precludes the plaintiff from amending his petition and seeking a recovery of the land. See, also, Wilson v. Carroll (Tex. Civ. App.) 50 S. W. 222; Bandy v. Oates, 44 Tex. Civ. App. 38, 97 S. W. 710, writ denied; Lee v. British, etc., Mortgage Co., 25 Tex. Civ. App. 481, 61 S. W. 134.

We therefore withdraw our original opinion, overrule appellee's motion for rehearing, grant appellant's motion for rehearing, reverse the judgment of the trial court, and here render judgment for appellant for the full sum of $6,300, being the cost of drilling the well to the appellant, as found by the jury, plus interest on same.