## GWYNN v. WISDOM. (No. 1194—4908.)

Commission of Appeals of Texas, Section A.
March 13, 1929.

Kenley, Dawson & Holliday, of Wichita Falls, for plaintiff in error.

Bullington, Boone, Humphrey & King, of Wichita Falls, for defendant in error.

HARVEY, P. J. On October 30, 1925, Mrs. Bell Wisdom executed to P. F. Gwynn an oil and gas lease on a tract of 10 acres of land owned by her in Archer county. The relevant portions of the lease read as follows:

"Agreement made and entered into the 30th day of October, 1925 by and between Mrs. Belle Wisdom, a feme sole, of Harris County, Texas hereafter called lessor (whether one or more) and P. F. Gwynn, of Wichita County, Texas, hereinafter called lessee:

"Witnesseth: That the said lessor, for and in consideration of ten dollars ($10.00) cash in hand paid, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of lessee to be paid, kept and performed in— has granted, demised, leased and let and by these presents does grant, lease and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas and of laying pipe lines and of building tanks power stations and structures thereon to produce, save and take care of said products, all that certain tract of land situated in the county of Archer, State of Texas, described as follows, to wit: * * *

"As a part of the consideration of this lease the grantee covenants to and with the grantor that on or before 30 days from this date he will commence the drilling of a well for oil on the above described tract of land and with due and reasonable diligence thereafter continue the drilling of said well until it reaches a depth of 1400 feet, unless oil or gas in paying quantities is discovered at a lesser depth. * * *

"It is agreed that this lease shall remain in force for a term of three years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.

"In consideration of the premises the said lessee covenants and agrees:

"1st. To deliver to the credit of lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth of all oil produced and saved from the leased premises.

"2nd. To pay the lessor ⅛ of the gross proceeds at well for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the time by making her own connections with the well at her own risk and expense.

"3rd. To pay lessor for gas produced from any oil well used off the premises at the rate of ⅛ of the gross proceeds derived from the sale of said casing head gas at the wells. * * *

"Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing. * * *

"Should oil and gas, or oil or gas be found in paying quantities upon above land, then same is to be reasonably developed."

The lessee, Gwynn, failed entirely to drill or commence to drill a well on the land. A few days after 30 days from the date of the the execution of the lease had expired, Mrs. Wisdom, through her attorney, notified Gwynn that the lease had expired, and, in effect, forbade Gwynn from conducting further operations under the lease. Shortly afterwards she brought this suit seeking to recover general damages in the sum of $10,000, alleged to have resulted from the breach by Gwynn of his obligation, expressed in the lease, to commence the drilling of a well on or before 30 days from the date of the lease.

On the trial of the case, the jury found, in answer to special issues: (1) That on or about November 30, 1925, it would have reasonably cost Mrs. Wisdom $6,300 to have drilled a well for oil or gas on the land to a depth of 1400 feet; (2) that the reasonable market value of the lease at the time it was executed was $150 per acre; (3) that the reasonable market value of the lease on December 1, 1925, and for some fifteen days prior thereto, was $5 per acre. There is evidence in the record to sustain each of these fact findings. Upon this verdict of the jury, the trial court rendered judgment for

266

Mrs. Wisdom in the sum of $1,450, being the market value of the lease at the time it was executed. less its value on December 1, 1925. Both parties excepted to the judgment. Mrs. Wisdom perfected an appeal and duly filed assignments of error based on the refusal of the trial court to enter judgment in her favor for the sum that it would have reasonably cost her to drill the well, as found by the jury. Gwynn duly filed cross-assignments of error based on the action of the court in refusing to render judgment in his favor. The Court of Civil Appeals rendered judgment for Mrs. Wisdom for the sum of $6,300 damages, measured by the amount which it would have cost her to drill the well. 294 S. W. 917.

The only questions presented in the record, which require consideration, have reference to the proper measure of damage to be applied in awarding Mrs. Wisdom compensation for the breach of Gwynn's obligation to commence the drilling of the well within 30 days from the date of the lease. It is needless to consider whether the lease stipulation in question involves within its terms merely a covenant on the part of the lessee, or involves also a limitation to mark the duration of the estate acquired by him under the lease, or a condition subsequent furnishing ground, in case of breach, for forfeiture at the option of the lessor. For in either case, the breach of the obligation fixed the liability of the lessee to the lessor for such damages as will compensate her for the loss sustained by her as a proximate result of the breach.

In ascertaining the loss suffered by the lessor, Mrs. Wisdom, as a result of the breach, resort must be had to the purposes intended to be accomplished by the drilling of the well, and the user rights of the respective parties in the well when drilled. The terms of the lease disclose that the only purposes for which the well was to be drilled were to search for and produce oil and gas. No use of the well was contemplated other than the use of same by the lessee, for the common benefit of the parties to the lease, as a means of searching for oil and gas, and producing those minerals if found. The benefits which the parties contemplated would accrue to the lessor from the drilling of the well did not include proprietorship of the well, either as a dry hole or as a producing well, but included only such benefits as would result from the discovery of oil or gas by means of the well. No special liability growing out of the breach of the lessee's obligation to drill the well is alleged or proved in the case. The general liability of the lessee which arose from the breach does not extend beyond compensation for the loss of the benefits last mentioned. And inasmuch as there is no evidence tending to show that oil or gas would have been discovered in paying quantities if the obligation had been performed,

no means of estimating such loss is supplied; hence a legal basis for compensatory damages is lacking.

We are not to be understood as intimating that Mrs. Wisdom, under proper pleading and proof, would not have been entitled to compensation, by way of special damages, for reasonable expenses incurred by her in drilling the well upon Gwynn's failure to drill it. The proof shows that she incurred no expenses in that respect, and such question is not before us. And, too, had Gwynn's obligation to drill the well rested upon an independent consideration moving from the lessor, a properly asserted claim by the latter for the restoration of such consideration, or to compensation for its value, would have raised an entirely different question.

Decisions are to be found which recognize the reasonable cost of the drilling of the well, even though no well be drilled by the lessor, as a proper measure of the latter's damage in cases of this sort. Other decisions to the contrary may be found. Our Supreme Court has never decided the question. In this situation, we have felt free to adopt the views we have expressed bcause we regard them as fundamentally sound.

The case appears to have been fully developed. We therefore recommend that the judgment of the trial court, as well as that of the Court of Civil Appeals, be reversed, and that judgment be here rendered for the plaintiff in error.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for plaintiff in error, as recommended by the Commission of Appeals.