**LAW et al. v. SWIFT et al.**    (No. 2454.)

(Court of Civil Appeals of Texas. Amarillo. April 8, 1925. Rehearing Denied April 22, 1925.)

1. **Mines and minerals** &cong;109—**Agreement that well driller could cease operation before reaching contracted depth held for jury on conflicting evidence.**

Whether parties to contract to drill oil well agreed that driller could cease operation and abandon further effort before reaching contracted depth *held* for jury on conflicting evidence.

2. **Mines and minerals** &cong;109—**That no benefit would result from completion of contract no excuse for failure to drill well to contracted depth.**

Drillers cannot defend failure to drill oil well to contracted depth because no benefit would result to other parties to contract by completion thereof.

3. **Limitation of actions** &cong;46(6)—**Limitation held not to run against action for breach of contract to drill well until 4 years after abandonment of drilling.**

Limitation would not begin to run against action for breach of contract to drill oil well to stated depth or on bond for performance until 4 years after abandonment of drilling.

4. **Damages** &cong;9—**Plaintiffs entitled to at least nominal damages for breach of contract.**

Plaintiffs are entitled to at least nominal damages for breach of contract, and such actual damages in addition as they may prove.

Appeal from District Court, Wichita County; Paul Donald, Judge.

Action by Warren Law and another, as trustees of a joint stock association, against O. A. Swift and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for appellants.

Cox, Fulton & Dickey, of Wichita Falls, for appellees.

JACKSON, J. This suit was instituted by Warren Law and C. W. Morgan, appellants, as trustees of a joint stock association, against O. A. Swift, for the breach of a contract, and against him as principal, and Charles E. Anderson, Jr., and Sam Sparks as sureties upon a bond securing the performance of the contract.

Appellants allege that as trustees they made a written contract with O. A. Swift, by which he obligated himself to drill a well upon a certain leasehold owned by them, to a depth of 2,000 feet, unless oil in paying quantities was found at a lesser depth; that they complied with all the obligations imposed upon them by the contract; that O. A. Swift took possession of the lease and drilled a well to the depth of 1,914 feet and found 12 feet of rich oil-bearing sand, and, if said well had been properly completed and finished, as provided in the contract, it would have produced oil in large quantities; but that the said O. A. Swift, though often requested, refused to comply with his contract and finish and complete said well according to the terms thereof; that he negligently broke the casing, which permitted water from above the producing oil sands to run into said well, by which the value of said well was greatly injured, if not destroyed; that the failure and refusal of the said O. A. Swift to comply with the contract resulted in plaintiff's damage in the sum of $30,000, as the lease is of no practical value. Appellants aver that they paid Swift the consideration for the performance of the contract, and that the reasonable cost of completing the well would have been $15,000, and pray for judgment against said Swift for the damages sustained, and against Charles E. Anderson, Jr., and Sam Sparks as sureties on the bond in the sum of $5,000.

The terms of said contract, which is dated May 7, 1919, after identifying appellants as parties of the first part, and O. A. Swift as party of the second part, that are necessary to the disposition of this case, read as follows:

"That party of the second part agrees * * * to prosecute the drilling of said well with due and reasonable diligence until the same shall have been completed to the depth of 2,000 feet unless oil be discovered in paying quantities at a lesser depth. In this connection party of the second part agrees to furnish all machinery, labor, fuel oil, water, and whatever else is necessary to the proper drilling and completion of said well, including casing of sufficient weight to prevent caving, said casing to be 20 pounds weight and 6⅝ inch dimensions at the bottom of the well when completed, and if said well shall produce oil in paying quantities party of the second part agrees to standardize the same—that is, to equip the same with standard swabbing and pumping machinery, also flow tank and storage tanks sufficient to take care of the production of oil therefrom, together with proper connections with said tanks and also with the pipe line company to which said oil shall be sold; it being intended by this instrument to provide for the drilling and completing of said well, and, in the event that oil be discovered in paying quantities, for the completing, standardizing, and equipping of said well for the production of oil therefrom at the cost and expense of the party of the second part and without any expense whatever to parties of the first part.

"If said well shall produce oil in paying quantities, it is agreed that, when same shall have been fully equipped by party of the second part for the production and saving of oil therefrom as hereinabove provided, same will

---

&cong;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

be managed and operated under the joint control of the parties of the first part and party of the second part, the expense, of operating to be divided equally between the parties hereto.

"As a consideration for the performance of this contract by party of the second part, the parties of the first part agree to execute an assignment of an undivided one-half of its lease and leasehold estate as to said 2½ acres of land; it being here expressly represented by parties of the first part that said lease is subject to a one-eighth royalty due the holder of the surface rights for oil, and it being intended that from and after the full performance of this contract by party of the second part each of the parties hereto shall own an undivided seven-sixteenths of the oil produced and saved from said well."

"Party of the second part agrees to execute and deliver to parties of the first part his bond with good and sufficient sureties conditioned on the faithful performance of this contract by party of the second part, said bond to be in the sum of $5,000."

The bond attached to and made a part of the pleadings, obligates O. A. Swift and the sureties to appellants in the penal sum of $5,000, conditioned that if O. A. Swift shall well and truly comply with and perform the obligations imposed upon him under said contract, the bond shall be null and void, and refers to the original contract for each of the terms, conditions, stipulations, and burdens imposed upon the said O. A. Swift.

O. A. Swift and Sam Sparks answered by general demurrer, special exceptions, general denial, and specifically denied in detail the allegations of negligence, and affirmatively alleged that the well was drilled in a good and workmanlike manner, and a failure to make out of it a producer was no fault of theirs, admitted making the contract, going onto the lease, drilling the well to the depth of about 1,900 feet, which they alleged was below the oil sand in that territory, and averred that at the depth of 1,850 feet all parties thought a paying oil sand had been found, and a thorough test was made, after which it was agreed by all parties that the well would not be a producer; that the said Swift continued to drill until he reached a depth of 1,900 feet and that by mutual agreement the well was abandoned, and it was specifically understood that drilling to the depth of 1,900 feet would be considered a complete performance of the contract, by which agreement appellants waived further drilling; that the well was in dry territory, and many other wells had been drilled in the immediate vicinity, all of which were dry holes, and appellants sustained no damage by the failure to drill to 2,000 feet, for the reason that the lease would not produce oil at 2,000 feet or a lesser depth; that appellants had breached their contract with the said Swift in failing to execute and deliver to him an assignment to the leasehold estate.

Sam Sparks specially pleaded that it was the duty of appellants to notify him of any breach of the contract by his codefendant Swift, which they failed to do, for which reason he was not liable thereon. He interpleaded other parties, asking, in the event judgment was had against him, that he recover over against them; and they answered by general demurrer and general denial.

On November 7, 1923, by supplemental petition, appellants replied that an assignment of the leasehold was made to appellee and placed in escrow, to be delivered to him on the completion of the well according to contract, and that they were, and at all times had been, ready, able, and willing to deliver said assignment, and tendered same to the said Swift if the contract was completed.

They also pleaded in the alternative that, if they were mistaken about the said O. A. Swift's finding an oil sand that would have made a large producer, and his negligence causing the loss thereof, that the contract specifically provided that the well should be drilled to a depth of 2,000 feet, which provision they never waived, and that, having failed to drill the well to a depth of 2,000 feet, thereby breaching the contract, appellants were entitled to recover their damages; that they filed their petition on July 20, 1920, shortly after work was abandoned, citation was issued thereon, and the said Sam Sparks served therewith, and, notwithstanding such service, he neither assumed, completed, or attempted to complete, or have his principal complete, the well as per contract, all of which, if any duty rested upon them to give him notice, was a sufficient discharge of such duty.

O. A. Swift and Sam Sparks, by supplemental answer, denied the allegations in appellants' supplemental petition, and alleged that Sparks was only a surety on the bond, and not responsible for the negligence of said Swift, and pleaded the statute of 4 years' limitation to appellants' allegation in said supplemental petition, setting up as a ground of recovery the failure of the said O. A. Swift to drill the well to a depth of 2,000 feet.

By trial amendment, appellants allege as an additional ground of negligence, the delay of the said O. A. Swift in his efforts to bring in said well from about the 1st of August till the middle of March, because said delay tended to injure the oil sand and make the same less productive, and was also likely to cause the casing to settle and permit water to enter the well, all of which was negligence.

[1] At the conclusion of the testimony, the court peremptorily instructed the jury to return a verdict for the defendants, and this action of the trial court the appellants challenge as erroneous, for the reason that the evidence adduced on the trial raised issues

of fact properly pleaded which they were entitled to have determined by a jury.

The contract introduced in evidence discloses that O. A. Swift agreed in writing, for the consideration of a one-half interest in the leasehold estate, to drill a well to the depth of 2,000 feet, unless oil was discovered in paying quantities at a lesser depth, and to prosecute the drilling with due and reasonable diligence until completed. The testimony shows that O. A. Swift entered upon the premises and drilled a well only to the approximate depth of 1,900 feet. The testimony tends to show that an oil-bearing sand was encountered at an approximate depth of 1,850 feet; that a test was then made, but Swift considered it necessary to drill deeper, and proceeded until he reached a depth of 1,900 feet, then discontinued work, but in March, 1920, arranged with one Cunningham, who went upon the lease at Mr. Swift's request and worked on the well from about the 8th day of March until the latter part of April, 1920; that the casing was broken or separated, and permitted water to run into the well, which was injured; that appellants did not agree that the drilling to the depth of 1,900 feet should be considered a performance of the contract; that, with proper management, the casing would not have broken, the water could have been cased off, the well made a producer; and that said Swift promised, from time to time, to resume work on the lease. These were controverted issues. An assignment to a one-half undivided interest in the leasehold estate to O. A. Swift was executed and placed in escrow, to be delivered on the completion of the well.

Without discussing the sufficiency of the testimony, or giving a detailed statement thereof, it is our opinion that the case should have been submitted to the jury for their determination, under proper instructions.

O. A. Swift had contracted to drill to a depth of 2,000 feet, unless oil was found in paying quantities at a lesser depth, and, to be relieved of his written obligation by a peremptory instruction, the evidence should show, without controversy, that appellants agreed that he could cease operation and abandon further effort. Fessman v. Barnes (Tex. Civ. App.) 108 S. W. 170.

[2] Appellants cannot defend their failure to drill the contracted depth because no benefit would result to appellants by the completion of the contract. Oil Company v. Head (Tex. Civ. App.) 163 S. W. 311, and cases cited; Covington Oil Co. v. Jones (Tex. Civ. App.) 244 S. W. 287; T. P. Coal & Oil Co. v. Barker et al. (Tex. Civ. App.) 252 S. W. 809.

[3] The contract was dated May 7, 1919, and limitation would not begin to run against appellants on the contract or bond until 4 years after the abandonment of the drilling of the well by appellees, and the testimony tends to show that work was being done on the well at the instigation of Mr. Swift in March and April, 1920.

[4] For every breach of a contract, the law conclusively presumes that nominal damage was suffered, and if, under proper instructions, a jury should find that appellees breached the contract, the appellant would, in any event, be entitled to recover nominal damages, and in addition thereto such actual damages as they may be able to show were suffered. G. M. Cotherman v. Oriental Oil Co. (Tex. Civ. App.) 272 S. W. 616.

For the error of the court in peremptorily instructing the jury to return a verdict for appellees, the judgment is reversed and the cause remanded.