P. F. GWYNN v. MRS. BELLE WISDOM.

*No. 4908. Decided June 25, 1930.*
(30 S. W., 2d Series, 298.)

*Kenley, Dawson & Holliday,* for plaintiff in error.

Appellant having rescinded the contract and having denied appellee the right to drill the well and having prevented his drilling the same, it was error for the court to render judgment against appellee in any amount, there being no allegations of special damages. Golden West Oil Co., No. 1 v. Golden Rod Oil Co., No. 1, 285 S. W., 631; Clemenger v. Flesher, 185 S. W., 304; Black on Rescission, paragraph 561; Van Roder v. Robinson, 20 Texas, 754; Mays v. Sanders, 36 S. W., 108; Stinson v. Sneed, 163 S. W., 989;

Grubbs v. McAfee, 212 S. W., 464; Gray v. Merritt, 276 S. W., 187; Cotherman v. Oriental Oil Co., 272 S. W., 616; Covington Oil Co. v. Jones, 244 S. W., 287; Empire Gas & Fuel Co. v. Pendar, 244 S. W., 184; North Healdton Oil & Gas Co. v. Skelly, 158 Pac., 1180; Sanzenbacher v. Howard Clay Oil Co., 283 Fed., 13; All-American Oil & Gas Co. v. Connellee, 3 Fed., 2d, 107.

*Bullington, Boone, Humphrey & King,* for defendant in error.

By the authorities and law in this state, it is well settled that the measure of damages for the breach of an express covenant in a contract to drill a well for oil and gas is the reasonable cost of drilling said well.

MR. JUSTICE PIERSON delivered the opinion of the court.

For a statement of the case we quote the following from the opinion of Judge Harvey, of Section A of the Commission of Appeals, in this case:

"On October 30, 1925, Mrs. Belle Wisdom executed to P. F. Gwynn an oil and gas lease on a tract of ten acres of land owned by her in Archer County. The relevant portions of the lease read as follows:

" 'AGREEMENT made and entered into the 30th day of October, 1925, by and between Mrs. Belle Wisdom, a feme sole, of Harris County, Texas, hereafter called lessor (whether one or more) and P. F. Gwynn, of Wichita County, Texas, hereinafter called lessee:

" 'WITNESSETH: That the said lessor, for and in consideration of ten dollars ($10.00) cash in hand paid, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of lessee to be paid, kept and performed in—has granted, demised, leased and let and by these presents does grant, lease and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas and of laying pipe lines and of building tanks, power stations and structures thereon to produce, save and take care of said products, all that certain tract of land situated in the county of Archer, State of Texas, described as follows, to wit:

\* \* \* \* \* \*

" 'As a part of the consideration of this lease the grantee covenants to and with the grantor that on or before 30 days from this date he will commence the drilling of a well for oil on the above described tract of land and with due and reasonable diligence there-

after continue the drilling of said well until it reaches a depth of 1400 feet, unless oil or gas in paying quantities is discovered at a lesser depth.

\*    \*    \*    \*    \*    \*

" 'It is agreed that this lease shall remain in force for a term of three years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee.

" 'In consideration of the premises the said lessee covenants and agrees:

" '1st.  To deliver to the credit of lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth of all oil produced and saved from the leased premises.

" '2nd.  To pay the lessor ⅛ of the gross proceeds as well for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the time by making her own connections with the well at her own risk and expense.

" '3rd.  To pay lessor for gas produced from any oil well used off the premises at the rate of ⅛ of the gross proceeds derived from the sale of said casing head gas at the wells.

" 'Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

\*    \*    \*    \*    \*    \*

" 'Should oil and gas, or oil or gas be found in paying quantities upon above land, then same is to be reasonably developed.'

"The lessee, Gwynn, failed entirely to drill or commence to drill a well on the land.  A few days after thirty days from the date of the execution of the lease had expired, Mrs. Wisdom, through her attorney, notified Gwynn that the lease had expired, and, in effect, forbade Gwynn from conducting further operations under the lease.  Shortly afterwards she brought this suit seeking to recover general damages in the sum of $10,000, alleged to have resulted from the breach by Gwynn of his obligation, expressed in the lease, to commence the drilling of a well on or before thirty days from the date of the lease.

"On the trial of the case, the jury found, in answer to special issues, (1) that on or about November 30, 1925, it would have reasonably cost Mrs. Wisdom $6300 to have drilled a well for oil or gas on the land to a depth of 1400 feet; (2) that the reasonable market value of the lease at the time it was executed was $150 per

acre; (3) that the reasonable market value of the lease on December 1, 1925, and for some fifteen days prior thereto, was five dollars per acre. There is evidence in the record to sustain each of these fact findings. Upon this verdict of the jury, the trial court rendered judgment for Mrs. Wisdom in the sum of $1450, being the market value of the lease at the time it was executed, less its value on December 1, 1925. Both parties excepted to the judgment. Mrs. Wisdom perfected an appeal and duly filed assignments of error based on the refusal of the trial court to enter judgment in her favor for the sum that it would have reasonably cost her to drill the well, as found by the jury. Gwynn duly filed cross-assignments of error based on the action of the court in refusing to render judgment in his favor. The Court of Civil Appeals rendered judgment for Mrs. Wisdom for the sum of $6300 damages, measured by the amount which it would have cost her to drill the well. (294 S. W., 917.)

"The only questions presented in the record, which require consideration, have reference to the proper measure of damage to be applied in awarding Mrs. Wisdom compensation for the breach of Gwynn's obligation to commence the drilling of the well within thirty days from the date of the lease. It is needless to consider whether the lease stipulation in question involves within its terms merely a covenant on the part of the lessee, or involves also a limitation to mark the duration of the estate acquired by him under the lease, or a condition subsequent furnishing ground, in case of breach, for forfeiture at the option of the lessor. For in either case, the breach of the obligation fixed the liability of the lessee to the lessor for such damages as will compensate her for the loss sustained by her as a proximate result of the breach."

As disclosed by the statement of the case, the trial court gave judgment to Mrs. Wisdom in the sum of $1450, the difference in the market value of the lease at the time it was executed and on December 1, 1925, the time of its rescission by the lessor, Mrs. Belle Wisdom. This judgment was reversed by the Court of Civil Appeals, and that court entered judgment for $6300, the amount the jury found it would have cost Mrs. Wisdom to have drilled the well to the depth contracted for.

Writ of error was granted by this Court, and the case was transferred to Section B of the Commission of Appeals, and an opinion was written by Judge Speer. He recommended that the judgment of the Court of Civil Appeals, awarding $6300 damages,

the amount the jury found it would cost Mrs. Wisdom to drill a well, be reversed, and that the judgment of the District Court, which awarded $1450, the decrease in market value of the lease be affirmed.

The Court being unable to approve the recommendation, withdrew the case from Section B and transferred same to Section A. Judge Harvey, of Section A, prepared an opinion, and recommended that the judgments of the District Court and of the Court of Civil Appeals both be reversed and judgment rendered for plaintiff in error, Gwynn. This recommendation was approved by the Supreme Court on March 13, 1929, and said opinion was published in 14 S. W., (2d), 265.

The Court not being fully satisfied with the reasons given in Judge Harvey's opinion, granting Mrs. Belle Wisdom's motion for a rehearing, vacated all previous orders, and set the case down for hearing before the Court.

In support of his recommendation, Judge Harvey said:

"In ascertaining the loss suffered by the lessor, Mrs. Wisdom, as a result of the breach, resort must be had to the purposes intended to be accomplished by the drilling of the well, and the user rights of the respective parties in the well when drilled. The terms of the lease disclose that the only purposes for which the well was to be drilled were to search for and produce oil and gas. No use of the well was contemplated other than the use of same by the lessee, for the common benefit of the parties to the lease, as a means of searching for oil and gas, and producing those minerals if found. The benefits which the parties contemplated would accrue to the lessor from the drilling of the well did not include proprietorship of the well, either as a dry hole or as a producing well, but included only such benefits as would result from the discovery of oil or gas by means of the well. No special liability growing out of the breach of the lessee's obligation to drill the well is alleged or proved in the case. The general liability of the lessee which arose from the breach does not extend beyond compensation for the loss of the benefits last mentioned. And inasmuch as there is no evidence tending to show that oil or gas would have been discovered in paying quantities if the obligation had been performed, no means of estimating such loss is supplied, hence a legal basis for compensatory damages is lacking."

We have concluded that defendant in error cannot recover under her pleadings and proof in this case. The evidence conclusively shows that immediately at the end of the thirty days in which plain-

tiff in error agreed to begin a well, to-wit: on the next day, December 1, 1925, or at most a few days later, the defendant in error in writing denied plaintiff in error the right to go on the land for the purpose of drilling a well.

Plaintiff in error failed to begin the drilling of a well on or before thirty days from the date of the lease. Immediately after the expiration of the thirty days, Mrs. Wisdom notified Gwynn that the lease was terminated, and denied him the right to go on the land for the purpose of drilling a well. Gwynn breached his contract by not beginning the well within the time specified. But he was released from the obligation to drill a well thereafter by the act of Mrs. Wisdom in denying him the right to go on the land for that purpose. The damages suffered by Mrs. Wisdom, under the facts of this case, were such special damages, if any, as she may have suffered by reason of or on account of Gwynn's delay in beginning to drill as he had contracted. Since she pleaded no special damages as may have been caused by the delay, she has not shown herself entitled to recover herein.

For the reasons stated, the judgments of the District Court and of the Court of Civil Appeals are both reversed, and judgment is rendered for plaintiff in error.