## OWENS v. FAIN–McGAHA OIL CORPORATION.

### No. 13416.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 6, 1936.

Rehearing Denied Dec. 11, 1936.

Myron A. Smith, Hampden Spiller, and Richard Owens, all of Fort Worth, for appellant.

M. E. McCullough and Bullington, Humphrey & King, all of Wichita Falls, for appellee.

BROWN, Justice.

We are very much impressed with the forceful motion for rehearing in this case, and, after careful consideration, we here and now withdraw the original opinion filed in this case and beg leave to submit

the following as the opinion and conclusions of the court:

This suit involves the breach of an express covenant to drill an oil well on a tract of land owned by appellant Owens, in Archer county, Tex., comprising 213.3 acres. Appellee Fain-McGaha Oil Corporation is the lessee named in the lease. It is an ordinary lease, such as we come in contact with frequently, and it contains the following covenant: "As an additional consideration for the execution of said lease, defendant, as lessee, agrees to begin drilling operations at some point on the above described land within sixty days from the date of said lease and to prosecute such drilling operations with due diligence until a depth of eighteen hundred (1800) feet has been reached or oil and gas in paying quantities at a lesser depth (be found); said oil and gas lease containing 213.3 acres more or less."

Appellant pleaded this lease in hæc verba, alleged his ownership of the lands and the breach of the above-quoted covenant on the part of the lessee, alleged the reasonable cost of the drilling of a well to the depth of 1,800 feet to be the sum of $5,400, and prayed for judgment as his damages in such sum.

Appellee answered by a general demurrer and general denial, and the trial court sustained such general demurrer and dismissed the suit.

We believe that the trial court erred in so doing, and our conclusions for so believing are as follows:

■ There is nothing in appellant's petition, he being the plaintiff below, to indicate that the lease was executed upon lands that are situate in either proven or semiproven territory and every reasonable intendment of the allegations of the petition must be indulged by this court in the face of a general demurrer levelled at the petition. Thus it is manifest that appellant's original petition having failed to allege that the lands are situate in proven or semiproven oil bearing territory, we have the right to assume that the allegations are sufficient as stating, and that they do in fact state because of such omission, that the lands are in unproven or what is commonly designated "wild cat" territory.

■ It is interesting to consider what should be the measure of damages for the failure to drill an oil well as contracted for in territory that is neither proven nor partially proven. One may easily understand that the breach of a contract to drill in proven or partially proven territory is the loss to the lessor of that which he may have reasonably expected had the contract been performed. It is not difficult to see that witnesses having knowledge of the subject-matter may testify to the reasonably probable production of the well or wells drilled had the contract been specifically performed. But it is quite difficult for us to understand how this rule should be made to apply where the lease is given on lands in unproven or "wild cat" territory. No expert witness could possibly testify to the probable production of a well in such territory. Under such circumstances, is the lessor to be left without damages, or is he simply relegated to mere nominal damages? And if left to nominal damages, on what basis could any fair-minded jury ascertain the damages sustained? What is it that the lessor has contracted for under such circumstances? He wants his land explored for oil or gas production. We know, because it is a matter of common knowledge, that if he has not leased all of his lands, the drilling of a well on a portion thereof immediately enhances the lease and royalty values of all his nearby lands, but unless the drilling operations are actually begun and offers are made to the lessor of purchase, how could any jury find what he would have reasonably realized because of a breach of the express drilling covenant?

■ We know, furthermore, that if the land is actually drilled and production in paying quantities is had, his lands and royalties are at once made most valuable; but we also know that there is absolutely no way in which any evidence or testimony can be introduced, showing such loss to the lessor, unless and until the production is had and offers of purchase have been made.

The contract between the parties lessor and lessee, in such circumstances as are shown in this case, is simply this: The lessor parts with seven-eighths of his interest in the oil and conveys his lands to the lessee for a given period of time and for such length of time thereafter as oil or gas may be produced from the lands in paying quantities. Furthermore, he delivers possession of the land to the lessee, for the purposes embodied in the contract. He has performed his covenants in the contract. In consideration of all this, the

**1016**

lessee expressly agrees to explore the lands for oil and gas and to begin drilling a well within the specified time, and to drill the same to a certain depth unless oil or gas be found in paying quantities at a lesser depth.

When the lessee breaches the contract, what has the lessor lost that is absolutely ascertainable? What has he lost that may be proven to any degree of satisfaction? Nothing, save having the lands explored for oil and gas, and that is exactly what he had contracted for. So far as the royalty is concerned, he may or may not receive such; that is wholly dependent upon what is developed when the lands are actually explored. The lessee contracts to explore the unproven area, and when he breaches the contract it would appear that under the rule of reason, which is of necessity based upon common sense, the measure of damages ought to be the sum of money necessary to explore the lands.

We have carefully considered the following cases: Gwynn v. Wisdom, 119 Tex. 320, 30 S.W.(2d) 298, by our able Supreme Court; as well as Texas P. Coal & Oil Co. v. Barker, 117 Tex. 418, 6 S.W.(2d) 1031, 60 A.L.R. 936, and Guardian Trust Co. v. Brothers (Tex.Civ.App.) 59 S.W. (2d) 343 (writ refused). And we believe that these cases are easily distinguishable from the case before us, and that they have to do with lands in proven or semi-proven territory.

We are fully aware of the fact that a complete answer to appellant's alleged cause of action would be the pleading and proving by proper testimony that there was no reasonable expectation of finding oil or gas in paying quantities on appellant's lands. But this is a matter of defense, and, we hold, cannot be reached by a general demurrer.

Under such authorities as Plunkett v. Meredith, 72 Ark. 3, 77 S.W. 600; Brown v. Homestake Exploration Corporation, 98 Mont. 305, 39 P.(2d) 168; Ardizonne v. Archer, 72 Okl. 70, 178 P. 263; All-American Oil Co. v. Connellee (C.C.A.) 3 F. (2d) 107, from foreign jurisdictions, and Henry Oil Co. v. Head (Tex.Civ.App.) 163 S.W. 311; Covington Oil Co. v. Jones (Tex.Civ.App.) 244 S.W. 287; Mitchell, Jones & May v. Dabney (Tex.Civ.App.) 294 S.W. 243, and Texas P. Coal & Oil Co. v. Stuard (Tex.Civ.App.) 7 S.W.(2d) 878, we are of the opinion that the trial court erred in sustaining the general demurrer addressed to appellant's original petition, and the judgment of the trial court is hereby reversed and the cause remanded.