### GOLSTON et al. v. BARTLETT.
#### No. 8511.

Court of Civil Appeals of Texas. Austin.

Jan. 12, 1938.

Rehearing Denied Feb. 2, 1938.

Woodruff & Holloway, of Brownwood, for appellant Roy D. Golston.

Woodruff & Holloway, of Brownwood, for appellant B. D. Dozier.

F. D. Wright, of Cisco, for appellee.

BLAIR, Justice.

As concerns this appeal, appellee, G. F. Bartlett, sued appellants, D. B. Dozier and Roy D. Golston, for $12,000, alleged to be the reasonable cost of drilling an oil or gas well on land described as the Campbell lease; and for cancellation of an assignment of an undivided one-half interest in the lease, executed in consideration of drilling the well. Dozier and Golston each filed a disclaimer of any interest in the lease; and the court decreed it to be the property of appellee. The jury found that $10,000 would have been the reasonable cost of drilling the well, and judgment was rendered for appellee for $5,000, one-half the drilling cost. Appellants have appealed from the $5,000 judgment.

The evidence showed without dispute that appellee Bartlett owned three oil and gas leases, referred to as the Jennings lease, the Rendleman lease, and the Campbell lease. By separate instruments Bartlett assigned Dozier an undivided one-half interest in each of said leases; and on the same day they entered into a contract whereby, in consideration of the one-half interest, Dozier agreed to "complete the drilling of a test well on each of the three oil and gas leases." The assignments of the one-half interest to Dozier were placed in escrow to be delivered as he completed the drilling of a well on each lease drilled. A well was drilled on each the Jennings lease and the Rendleman lease during the year 1930, which produced gas; and the assignments of

the one-half interest in said leases were delivered to Dozier, the Campbell lease assignment remaining in escrow. The contract provided that a well should be drilled on the Campbell lease, "if, when, and as a market for gas may require, and at a location agreed upon by the parties." It further provided that, if Dozier failed or refused to complete the drilling of any well contemplated, he should have no interest in the lease on which he failed or refused to drill.

On December 4, 1931, Dozier and Golston entered into a contract whereby Dozier assigned to Golston his one-half interest in the Jennings and Rendleman leases, his interest in the above-mentioned contract between Dozier and Bartlett, and Dozier's interest in other leases and contracts relating to the sale of gas by Dozier to other parties, and his interest in pipe line and other machinery and equipment.

Both Dozier and Golston went into possession of and sold large amounts of gas from the Jennings and Rendleman leases. Both Bartlett and Golston sold gas to Santa Anna Gas Company, and which sales have continued. On October 31, 1933, they entered into a contract to sell gas to the Knappe-Coleman Glass Company, which continued until January, 1935, when the contract was authorized to be discontinued under court order in the receivership proceedings of the Bartlett & Golston properties, because the Glass Company was in arrears in payment of the gas.

No well was drilled on the Campbell lease by either Dozier or Golston, although appellee requested them to do so at and just prior to June 1, 1934, at which time it was alleged that the market for gas required the drilling of the well on the Campbell lease. By letter dated August 18, 1934, Bartlett severed all relationship with Golston, "in respect to the gas business or the production or sale of gas or any other business of any kind."

■ The jury found upon sufficient evidence that Golston accepted and asserted the rights of an assignee of the contract between Bartlett and Dozier as to the Campbell lease, and his proposition that he never assumed the obligation to drill a well on the Campbell lease is not sustained.

■ The jury failed to answer the issue submitted as to whether "the market required the drilling of a third well." Both Dozier and Golston contend that the pleadings and evidence raised the issue of whether the market for gas required the drilling of such a well on the Campbell lease; and, since the jury failed to answer the issue, no judgment should have been rendered against them for one-half the reasonable cost of drilling the well. We sustain this contention. The pleadings and evidence made the issue of whether the market for gas required the drilling of the well on the Campbell lease the main or principal factual issue in the case. Such issue was the principal factual defense of appellants to appellee's suit. The evidence was conflicting on the issue, and appellants were entitled to a jury finding thereon. And, since the pleadings and the conflicting evidence raised the issue that the well should be drilled, "if, when, and as the market for gas may require," and since the jury failed to answer the issue, the court could not assume that such condition existed and award damages for an alleged breach of the contract to drill the well. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.2d 1084; Texas Employers' Ins. Ass'n v. Shilling, Tex.Com.App., 289 S.W. 996; Wagstaff v. North British & Mercantile Ins. Co., Tex.Civ.App., 88 S.W. 2d 550; 41 Texas Jur. 1220–1222 and 1240; Speer on the Law of Special Issues in Texas, §§ 429, 430.

■ The jury found in answer to special issues presenting another theory of damages (not relied upon as a basis for the judgment appealed from) that the special contract to supply gas to the Glass Company by Bartlett & Golston was lost because of a shortage of gas; and that the value of such gas would have been $12,000 between October 1, 1934, and January 1, 1936. Manifestly these issues were submitted for the purpose of finding the profits that appellee would have received from this special contract. They did not attempt to submit the issue of whether there was a market for gas within the meaning of the provision of the contract to drill the well "if, when, and as a market for gas may require." The finding that the special contract was lost because of a shortage of gas may have borne incidentally upon the question of whether the market required the drilling of another well, but was not broad enough to cover the latter issue, which necessarily involved a market ready, willing, and able to pay for the gas. The undisputed evidence showed that there were only two purchasers of gas at the time in question,

namely, Santa Anna Gas Company, which had a prior right to gas, and the Glass Company, which defaulted in the payment of gas furnished it after the second month, and only paid "in dribbles." From April to September, 1934, it bought $3,746.13 of gas, but only paid $1,447.10, leaving a balance due of $2,299.03, which increased to $3,709.62 by December, 1934. And, while it is true there was a shortage of gas as to this customer, its contract was discontinued by order of the court in the receivership proceeding of the Bartlett & Golston properties, in January, 1935, because it could not or did not pay for the gas furnished it under the contract. And appellee Bartlett testified that Golston told him that neither he nor the partnership could afford to spend any considerable amount of money for the purpose of drilling a well from which to sell gas to the Glass Company, until they had some reasonable assurance that collection could be made for the gas sold to it; and that such was the position of Golston in the matter. The provision for drilling the well, "if, when, and as market for gas may require," necessarily meant a market that could pay for the gas, and no obligation rested upon either Dozier or Golston to drill the well until that condition obtained. The evidence clearly raised a jury issue as to whether such a market condition prevailed on June 1, 1934; and until appellee terminated or repudiated the contract by his letter, dated August 18, 1934.

 We do not sustain the contention of appellants that the contract to drill the well on the Campbell lease was unenforceable because it left to be determined by future agreement the matter of the location of the well. Nor do we sustain the contention that the parties did not intend to enter into a binding obligation to drill a well on the Campbell lease, because the contract provided that title would pass to Dozier to the one-half interest by drilling a well, if and when the market should require it, and in the event the parties were able to agree upon a location therefor. The contract clearly provides that in consideration of the one-half interest Dozier agreed to "complete the drilling of a test well on each of the three oil and gas leases." No difficulty arose as to the location of the wells on any of the leases; and no difficulty arose with regard to making proof that the well should be drilled, "if, when, and as a market for gas may require." The parties may provide

in a contract that no obligation shall arise until the happening of a certain event, or that a certain condition may obtain; and where, as in the instant case, the event or condition may be readily proved, the contract is enforceable.

 The contention of appellants that the undisputed evidence showed that, before there was any market requiring the drilling of the well on the Campbell lease, Bartlett terminated or repudiated all business relations between himself and Golston, is not sustained. The petition alleged, and the evidence tended to show, that the market required the drilling of the well on or prior to June 1, 1934. The letter from Bartlett to Golston terminating or repudiating any partnership or other business relations between them was dated August 18, 1934; and the evidence showed the letter to have been occasioned, at least in part, by the refusal of Golston to drill the well.

 Nor do we sustain the contention of appellants that judgment should have been rendered for them upon the jury's finding that a well drilled on the Campbell lease would not have produced gas in paying quantities. The court properly disregarded the jury's finding, because no such issue should have been submitted. The contract expressly required Dozier to "complete the drilling of a test well on each of the three oil and gas leases." Bartlett alleged, and his evidence raised the issue, that Dozier and Golston breached the express terms of the contract to drill such a well on the Campbell lease. The only purpose of the issue was to show that, even though appellants breached their contract to drill the well, appellee was not injured, because witnesses were permitted to testify over objection that the lease was probably nonproductive of gas. The rule is settled that, where it is shown that a party has breached his express contract to drill an oil or gas well, he will not be permitted to show that the party for whom he was obligated to drill the well had not been injured by the breach, because the land to be drilled was probably nonproductive of oil or gas. A contractor cannot set up his own default to drill a lease in order to terminate the lease and escape liability under the terms of the contract. Empire Gas & Fuel Co. v. Pendar, Tex.Civ.App., 244 S.W. 184; Roberts v. Bettman, 45 W.Va. 143, 30 S.E. 95; Clemenger v. Flesher, Tex.Civ.App.,

185 S.W. 304; Texas Pac. Coal & Oil Co. v. Gholson, Tex.Civ.App., 1 S.W.2d 649; Cotherman v. Oriental Oil Co., Tex. Civ.App., 272 S.W. 616; Thornton's Oil & Gas, vol. 1, 4th Ed., p. 520. In such situation both Dozier and Golston would be liable for nominal damages for the breach of their contract to drill the well and for such damages as would reason-ably compensate appellee for the breach.

■ In this connection it may be ob-served that the provision of the contract that, in the event Dozier failed or refused to drill the well, he should have no right to the one-half interest in the lease, was for the sole benefit of Bartlett. (See authorities last above cited.) The contract expressly obligated Dozier and Golston to drill the wells under the conditions pre-scribed, and they cannot escape liability for the breach for nominal damages, and for such damages as would reasonably com-pensate appellee for such breach of con-tract.

■ In awarding appellee judgment for $5,000 for breach of the contract, the trial court applied an improper measure of damages under the facts of this case. The measure of damages for breach of the contract to drill the well on the Camp-bell lease is the value of the performance of the contract to appellee, if any, and not what it would have cost appellants to drill the well. The contract provided that, after drilling and equipping the re-spective wells referred to, the parties should bear equally further costs of operation of the wells. It may be also observed that appellee brought his suit primarily to re-cover one-half of the net profits of the gas which could have been produced and sold from an additional well on the Camp-bell lease, if it had been drilled. In the alternative, he sought to recover damages as measured by one-half the cost of drill-ing the well, or what it would have cost appellants to have performed the contract. The jury having determined the value of such cost, appellee, on motion for judg-ment, abandoned his cause of action for the value of one-half the net profits or performance of the contract; and prayed for and recovered judgment for damages as measured by one-half of what it would have cost appellants to have drilled the well.

It is apparent from the leases and the contract to drill them for a one-half in-terest therein that the object of the parties in making the contract was to develop and operate the leases for the mutual profits to be derived therefrom. In such situation our Supreme Court and several of the Courts of Civil Appeals have held that the measure of damages for breach of a con-tract to drill an oil or gas well is what would have been the value of the perform-ance of the contract to the plaintiff.

In Texas Pacific Coal & Oil Co. v. Barker, 117 Tex. 418, 6 S.W.2d 1031, 1037, 60 A.L.R. 936, it is said:

"The purpose of the law to give com-pensation for breach of contract is sub-served by allowing the injured party to have the value to him of the contract's performance. 3 Williston on Contracts, §§ 1338, 1339, pp. 2392 to 2394. Perform-ance of a covenant to produce a certain quantity of oil or gas, under a contract promising royalty, is worth to the lessor as much as the value of his royalty at the time the oil or gas should have been produced and delivered or marketed. * *

"The amount and value of oil or gas production, obtained or obtainable through reasonable diligence, must be definitely alleged, and must be proven with reason-able certainty before damages may be al-lowed for breach of an express or implied covenant to continue the production of oil or gas, whether such damages result from failure to produce oil or gas or from loss of same by drainage."

See, also, Gwynn v. Wisdom, 119 Tex. 320, 30 S.W.2d 298.

In Guardian Trust Co. v. Brothers, Tex. Civ.App., 59 S.W.2d 343, 346, writ of error refused, wherein lessee failed to drill an oil well and lessor sued for breach of the agreement, contending that the measure of damages was the reasonable cost of drilling the well, the court held as follows:

"The loss or injury actually sustained by the obligee, rather than the cost of perform-ance by the obligor, is the proper measure of damages for the breach of a contract. When that well-established rule is departed from, compensatory damages become either punitive damages, because too much, or inadequate damages, because too little, and the fundamental purpose of compensatory damages is lost sight of.

"We can see no reason for departing from the well-established rule of law for measuring damages simply because the con-tract relates to the sinking of an oil well."

██ The rule as announced in these cases defining the measure of damages applicable to cases involving breach of a contract to drill a well presents some refinement when compared to the broad statements found in the earlier cases, where the cost of drilling was applied as a measure of damages, though there was no prospect of securing oil. This refinement of the rule is shown in those cases where drilling cost could be accepted as the measure of damages. Yet, if it is shown that the profits which would have been received had the well been drilled are less than the cost of drilling the well, then the smaller sum is the amount of damages recoverable. Texas Pacific Coal & Oil Co. v. Stuard, Tex.Civ. App., 7 S.W.2d 878. Some of the holdings in this case were modified by the decision of the same court in the later case of Guardian Trust Co. v. Brothers, 59 S.W.2d 343. Nor does the refined rule conflict with the cases cited by appellee, wherein the Courts of Civil Appeals have announced the correct measure of damages to be the cost of drilling the well, rather than the value of the performance of the contract to plaintiff, because in such cases the party obligated to drill the well had actually received the consideration for drilling it. Neither Dozier nor Golston received any consideration for drilling a well on the Campbell lease, and the contract provided that the only consideration for drilling the well would be the delivery of the assignment of an undivided one-half interest in the lease if and when the well was completed. Texas Pacific Coal & Oil Co. v. Stuard, Tex.Civ.App., 7 S.W.2d 878; Curry v. Texas Company, Tex.Civ.App., 18 S.W.2d 256; Mitchell, Jones & May v. Dabney, Tex.Civ.App., 294 S.W. 243; Covington Oil Co. v. Jones, Tex.Civ.App., 244 S.W. 287, and Henry Oil Co. v. Head, Tex.Civ.App., 163 S.W. 311.

██ In the recent case of Curry v. Texas Company, supra, cited by appellee, and involving a contract to drill collateral to a lease, the rule allowing reasonable cost of drilling was applied; but on rehearing the rule was modified to the extent that, if the value of performance be shown to be less than the cost of drilling, then the true rule to be followed was the value of performance. There was evidence in the instant case which tended to show that the value of performance was less than the cost of drilling the well. The evidence is undisputed that a well had been drilled on the Campbell lease and that it produced gas; and appellee alleged that a well drilled on the Campbell lease would have produced oil in paying quantities. It is true appellants offered proof tending to show that the lease was nonproductive of gas. This appellants could show not as an excuse of breaching their contract to drill the well, but as minimizing actual damages. Law v. Swift, Tex.Civ.App., 271 S.W. 106.

The judgment decreeing the Campbell lease to be the property of Bartlett is affirmed. The judgment awarding Bartlett $5,000 damages, as one-half of the reasonable cost of drilling the well, is reversed, and, because of the confusion disclosed by the record as to the proper measure of damages, the cause for damages is remanded for trial, in accordance with this opinion.

Affirmed in part, and in part reversed and remanded.

### On Appellants' Motion for Rehearing.

Appellants say on rehearing that we correctly held that "the measure of damages * * * is what would have been the value of the performance of the contract to the plaintiff"; but that we failed to apply such measure of damages to the jury's finding that, if a well had been drilled on the Campbell lease, it would not have produced gas in "paying quantities." This issue did not submit the value of the performance to plaintiff, but whether such a well would produce gas in paying quantities for all the owners, above the costs of operation. The definition given of "paying quantities" so instructed the jury. The contract provided that plaintiff was to pay only one-half of such costs. The jury also found in answer to the next succeeding question that the value of the gas which would have been produced from "a well on the Campbell lease" for the period involved would have been $1,425; and there is no way of telling whether this valuation was less costs of operation. If it can be held that these two answers of the jury are not conflicting, then the jury did not find what one-half the costs of operations would have been. For these reasons, and as stated in our original opinion, "because of the confusion disclosed by the record as to the proper measure of damages," the cause was remanded for another trial. The motion for a rehearing will be overruled.

Overruled.