HIGGINS, Justice.
This suit was instituted against the defendant for damages alleged to be due the plaintiff because of the defendant’s failure to comply with his unconditional contractual obligation to drill a well to a certain depth in search of oil and gas under a mineral lease which the parties owned jointly. It is stated in the petition that in consideration of the .sale and transfer by the plaintiff to the defendant of a half interest in a certain oil, gas and mineral lease covering the south ten acres of land in Section 36, Township 11 North, Range 11 West, DeSoto Parish, Louisiana, the defendant paid $1,000, in cash, and obligated himself to drill a well thereon, immediately after the completion of a well on the north ten acres adjacent thereto, upon which the defendant alone owned the mineral lease; that the well drilled on the north ten acres proved to be a dry hole and was abandoned by the defendant; and that the defendant refused and failed' to drill the well on the south ten acres covered by the mineral lease in which the plaintiff had transferred to him an undivided half interest. The petitioner alleged that the cost of drilling the well would have been $14,000, for which amount he prayed for judgment, as damages for defendant’s breach of the contract.
The defendant filed exceptions of no right and no cause of action, which were sustained by the lower court on the ground that the plaintiff could not prove that he sustained a loss or was deprived of profit by the defendant’s failure to drill a well on the south ten acres, as there was no assurance that if the well had been drilled it would have been a producer. Plaintiff appealed to this Court and we annulled the judgment and remanded the case for further trial on the ground that, as the plaintiff alleged he had sustained the loss of the chance or prospect of being enriched if defendant had fulfilled his contract, and this being a thing of value in itself, the petition stated a right or cause of action. 192 La. 229, 187 So. 650, 122 A.L.R. 446.
Thereupon, the defendant filed an an-_ swer admitting the sale and transfer to himself by the plaintiff of an undivided half interest in the mineral lease covering the south ten acres and the unconditional contract to drill a well thereon to a certain depth and that he had failed and refused to drill the well, but denied that the cost of drilling the well would have been $14,000 and averred that it would not have amounted to more than $6,400. He specially plead *881 ed that, when the contract between himself and the plaintiff was entered into on July 13, 1937, it was generally believed by those well informed in the oil business that a new field had been discovered and that oil and gas would be found under the south ten acres; that at the time for the performance on September 3, 1937, he had completed the drilling of the well on the north ten acres and that this well had been abandoned as unsuccessful; that the south ten acres, at that time, had little or no value for oil or gas; that, except in one instance where oil was produced in paying quantities, various other wells had been drilled in the vicinity of the south ten acres and that each of them had likewise been abandoned as dry holes; that after September 3, 1937, there was no further development in Section 36 or its vicinity; that it had been demonstrated and proved to the satisfaction of experienced oil operators by the various wells which had been drilled that the south ten acres would not produce oil and gas in paying quantities at the depth set forth in the contract and, therefore, the drilling of a well thereon would have been a vain and useless thing; that the defendant informed the plaintiff of this fact and offered to reassign the lease to him; that at the time the defendant was to commence the drilling of the well on the south ten acres, the chances or prospects or the uncertain hope of the plaintiff of being enriched by the drilling of the well had little if any value.
The facts developed in the trial of the case on the merits are substantially the same as those set forth in the pleadings.
There was judgment in favor of the defendant, dismissing the plaintiff’s suit and he has appealed again.
The defendant contends that in a case like the present one a litigant should not be permitted to recover damages, unless he has actually suffered a loss or has been deprived of a definite profit, and that where damages may be inferred or presumed, the defendant should be allowed to show that no actual loss was suffered by reason of the breach of the contract.
The pertinent part of the provisions of Article 1934 of the R. C. C., reads:
“Where the object of the contract is any thing but the payment of money, the damages due to the creditor [obligee] for its breach are the amount of the loss he has sustained, and the profit of which he has been deprived, * * (Italics and parenthesis ours.)
It will be noted that there are two elements of recoverable damage (1) the loss sustained and (2) the profits of which the creditor or obligee has been deprived by the unjustifiable breach of the contract. We shall discuss these two items of damage in their inverse order.
The uncontradicted expert testimony and geological data establish beyond dispute that the plaintiff’s uncertain hope or prospect for profit or gain from the discovery of oil or gas in paying quantities from the leased property was exceedingly remote and purely speculative.. We, therefore, readily come to the conclusion that the plaintiff has failed to prove with that certainty required by law this alleged element *883 of damage. Julian Petroleum Corp. v. Courtney Petroleum Co., 9 Cir., 1927, 22 F.2d 360 and Garland P. Fallis et al. v. Julian Petroleum Co., 108 Cal.App. 559, 292 P. 168.
The defense to the plaintiffs claim for damages for the loss of the right to have the well drilled by the defendant, i. e., the act of performance, is that there is no method by which the value of this alleged item can be ascertained. In our former opinion herein we cited with approval authorities which held that the measure for such damage or loss is the cost of drilling the well. Fite v. Miller, supra. See also Ardizonne v. Archer, 72 Okl. 70, 178 P. 263; Brown v. Homestake Exploration Corp., 98 Mont. 305, 39 P.2d 168; Pen-O-Tex Oil & Leasehold Co. v. Pittsburgh Western Oil Co., 3 Cir., 66 F.2d 657, and Knupp v. Bright, 186 Pa. 181, 40 A. 414.
It appears that, prior to 1933, the general rule on this question in Texas was that the plaintiff could recover damages to be estimated by the costs of drilling the well, but later, in the cases of Guardian Trust Company v. Brothers, Tex.Civil App. 1933, 59 S.W.2d 343, it was held that only nominal damages would be allowed for the breach of the obligation to drill. However, in Golston v. Bartlett, Tex. Civ.App. 1938, 112 S.W.2d. 1077, it was decided, if the lessee received consideration for the obligation to drill the well, the measure of damage would be the cost of drilling it.
In the instant case, the defendant’s own evidence establishes the fact that the net cost of drilling the well at the time performance was due would have been the sum of $6,400. There can be no doubt that the-plaintiff was illegally and unjustifiably deprived of the right under the unconditional contract to have the well drilled at the expense of the defendant. It was the refusal and failure of the defendant to comply with this serious obligation of his contract which was supported by an important and valuable consideration that caused the-loss to the plaintiff of his right to have the well drilled by the defendant at his own-cost. This right was valuable to the plaintiff and was the primary reason why he parted with a half interest in his oil and gas lease in favor of the defendant. The-parties themselves and especially the defendant recognized this fact by agreeing,, on July 13, 1937, to drill a well and to pay-all of the costs thereof. There is no uncertainty as to what this proposed expenditure would amount to because the defendant himself unquestionably proved that it would have been $6,400, exclusive of salvageable-materials and equipment.
The circumstance that at a subsequent date, i. e., September 3, 1937, the defendant and his experts concluded that it had been sufficiently demonstrated by drilling operations and geological data that the chances for the discovery of oil and gas. in paying quantities on the south ten acres-were so remote that they believed it would have been a vain and useless act to drill the well is immaterial, because the defendant had received the advantages of the-right to become a half owner in all of the oil and gas that might have been produced under the mineral lease through the drill- *885 ling of a well thereon. The fact that the' investment proved unprofitable is of no moment for, certainly, the defendant could not speculate or invest in an oil venture at the plaintiff’s expense and risk. It is no defense to the claim of loss of the right to have the well drilled by the defendant, i. e., the act of performance, that subsequent happenings showed that the prospects for discovering oil and gas at the time of performance were practically nil or at most equivalent to “wildcat” chances, for this contention fails when the fact is taken into ■consideration that at the time the contract was entered into the plaintiff transferred to the defendant valuable mineral rights and the defendant, in return therefor, unconditionally bound himself to perform his part of the agreement. If the plaintiff had furnished the defendant with $6,400 cash ■for the purpose of drilling the well instead ■of valuable mineral rights, and the defendant refused and failed to drill the well, it is clear that the plaintiff could have recovered the $6,400 in a suit for damages for the breach of the agreement. The only difference between the instant case and the hypothetical - one is that here the plaintiff parted with valuable mineral rights and in the hypothetical case the obligee paid $6,-400 in cash. To carry the defendant’s argument to its logical conclusion with reference to the above assumed case, if the value of the dollar had been depreciated due to subsequent economic conditions and the plaintiff had sued the defendant for damages for breach of the contract, he could plead as a defense that the value of the dollar at the time for the performance of the Contract was only worth seventy-five cents and, therefore, the plaintiff could only recover from the defendant, in damages, three-fourths of the $6,400.
The plaintiff lost the right to have the well drilled by the defendant through his breach of the contract. The value of this right or the act of performance is the amount of money that it would have cost the defendant to drill the well when he should have doné so. Therefore, it is our conclusion that the amount that it would have cost to drill the well at the time of performance furnishes a measure for determining the value of the loss or damage which the plaintiff sustained as a result of the defendant’s unjustifiable nonperformance or breach of the contract, which deprived the plaintiff of his right to have the well drilled by the defendant. For interesting and informative discussions on this subject see the articles written by Dr. J. Denson Smith and Dr. Harriet S. Daggett of the Louisiana State University Law School, in Volume 11 of the Louisiana Law Review, pages 55, 58 and 83, and the article by Honorable Leslie Moses in Volume XIV, page 81, Tulane Law Review.
Is the plaintiff entitled to recover as damages the full cost of drilling the well, or is the defendant entitled to an allowance, due to the fact that under the terms of the sale and contract the defendant was to be entitled to a half ownership in the well to be drilled and -in the oil and gas that might be produced from the well or wells under the lease which the parties owned jointly?
.It is conceded that defendant did not drill a well and hence no oil or gas was produced. Therefore, a one-half interest in *887 the mineral lease involved was all that the defendant owned in this transaction. Now his half interest in, the mineral lease was acquired primarily because he unqualifiedly bound himself to drill the well on the land at his own expense. There can be no doubt that if the defendant had not so bound himself the plaintiff would not have parted with one-half of his valuable mineral rights in the defendant’s favor, because this unconditional drilling obligation on the defendant’s part was the predominating and major consideration for the transfer of a half interest in the lease. But the defendant illegally refused to comply with his contractual obligations to drill the well at his cost, although the plaintiff had fully performed his part of the agreement by transferring one-half .of his valuable mineral rights in the lease to the defendant. A diminution of the damages the plaintiff has suffered as a result of the breach of the contract, is sought by the defendant on the ground that he owns a half interest in the lease and therefore is entitled to one half of the benefits that might result from the act of performance or drilling the well. This plea loses its force when defendant admits that he refused and failed to drill the promised well which was the overwhelming consideration that prompted and caused the plaintiff to transfer that very same one-half interest in the mineral lease to him. It was entirely the defendant’s own fault that the well was not drilled and he cannot blame the plaintiff or prejudice'his rights by his own nonperformance. Defendant cannot now be heard to say he is entitled to an allowance or credit on plaintiff’s loss or claim for damages, because he prevailed upon the plaintiff to transfer him a one-half interest in the lease in consideration of agreeing to drill a well at his own expense and later refusing to do so.
It must be borne in mind that the plaintiff was entitled to have the entire act of performance carried out, i. e., the well drilled. This , was expressly and clearly stipulated for the drilling clause was unqualified and unconditional. It cannot be inferred or implied that the parties contemplated anything less than drilling the well would be considered performance of the agreement by the defendant. Plaintiff was entitled to the whole or complete act of performance — not a part or one-half thereof. This right to have the well drilled was worth $6,400, the amount it would have cost to do the work. The illegal and unwarranted refusal of the defendant to comply with his obligations under the agreement deprived the plaintiff of the right to have the act of performance carried out by the defendant at his own expense and the loss of this right was equivalent in money to the sum of $6,400.
While it is true the defendant would have been entitled to one half of the anticipated benefits of the act of performance, i. e., any oil and gas produced by drilling the well, if defendant wanted to get this advantage for whatever it was worth, he should have drilled the well. But clearly the defendant cannot by deciding not to comply with his obligations, thereby deprive the plaintiff of any part of his claim for loss or damage.
*889 The provision in the contract that, if a producing well were brought in,, the defendant would retain from his own one-half interest and be allowed to withhold from the plaintiff’s one-half interest in the first minerals produced sufficient amounts thereof, until he had received the equivalent of $7,500, to cover all of the expenses in connection with drilling and equipping the well which the parties were to own jointly, cannot be considered as a basis for an allowance in favor of the defendant against damages for three reasons:
(1) The right to withhold the gas and oil from the half interest of the plaintiff from the first oil and gas produced was predicated upon the condition precedent that the well to be drilled would be successful, which hope was not realized;
(2) The defendant cannot take the position nor is it a fact that the plaintiff was in any way at fault or responsible for the failure to drill the well or find oil and gas in paying quantities under the land; and
(3) The contract stipulated that in the event the proposed well resulted in a dry hole, all of the tubing equipment, machinery, etc., was to belong exclusively to the defendant. '
The plaintiff had the right to reject the offer of the defendant to return to him his half interest in the mineral lease because, first the plaintiff had already performed his part of the contract by unconditionally conveying and delivering with warranty to the defendant the one-half interest in the mineral lease and, second, after September 3, 1937, it had been definitely determined by the lapse of time and drilling operations that what was considered an “excellent investment” was made to appear an unattractive one, i. e., the defendant’s own expert witnesses’ testimony'shows that the mineral lease on the south ten acres on July 3, 1937, had, a market value of approximately $8,800, but that after September 3, 1937, it had only a nominal value or at most the equivalent of what “wildcat” prospectors would pay for such a mineral lease. In short, to permit the defendant to return his half interest in, the mineral rights to the plaintiff, in order to relieve him from damages for the breach of the contract through his nonperformance, would be allowing the defendant at the financial risk of the plaintiff to have received all of the potential benefits and advantages and the right to all anticipated profits in the oil and gas venture or investment without any expense or cost on his part to carry out his obligation to drill the well. Furthermore, during the period from July 13, 1937, to September 3, 1937, the defendant had definitely gained the right as a result of the transaction to sell or assign the whole or any part of his one-half interest in the mineral lease and might very well have done so at a profit. The prospects were so bright he did not do so and now must bear his share of the loss, in the form of damages, for the joint venture and investment from which he was to have received one-half of the expectant advantages, benefits and profits.
The value of the right to have the well drilled did not depreciate for it would *891 have cost a certain determinable amount to have had that work done regardless of whether or not the result would be a success or failure. This is true even though the contractual consideration itself, i. e., the one-half interest in the mineral lease or mineral rights did depreciate in value due to subsequent events. To hold otherwise would be equivalent to saying there was not a valid consideration or had been a failure of consideration for the contract to drill .the well, when it has already been decided by this Court that such a contention is unsound. Glassell v. Richardson Oil Co., 150 La. 999, 91 So. 431, and Fite v. Miller, supra.
For the reasons assigned, the judgment appealed from is annulled and set aside and it is now ordered, adjudged and decreed that there be judgment herein in favor of Luther S. Fite, plaintiff, and-against Paul L. Miller, defendant, in the full sum of six thousand four hundred ($6,400) dollars, with legal interest thereon from judicial demand until paid, and for all costs of court.
O’NIELL, C. J., concurs in the result.
PONDER, J., dissents.