## RIDDLE v. LANIER.

### No. 13803.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 7, 1938.

Rehearing Denied Nov. 25, 1938.

John Atchison and Cecil Murphy, both of Gainesville, for A. J. Riddle.

W. S. Moore, of Gainesville, for C. C. Lanier.

SPEER, Justice.

Plaintiff, C. C. Lanier, sued A. J. Riddle, in the District Court of Cooke County, for damages for the breach of a contract to drill a well, in prospect for oil and gas, on a 60 acre tract of land embraced in a block alleged to contain anywhere from 2,300 to 3,000 acres, the exact number of acres not being material to this appeal.

Allegations were made that plaintiff had procured leases from land owners and contracted with them to drill a well somewhere within the block; that plaintiff then contracted with defendant to drill the well on a certain 60 acre tract, known to the parties as the Thetford land, within the block of leases, to a depth of 3,500 feet, or until oil or gas should be found, or until it reached Ellenberger Lime' or some other impenetrable substance at a lesser depth; that in consideration for the drilling of such a well, plaintiff obligated himself to, and did, convey and assign to V. V. Waite, for defendant, 1,030 acres of said leases, retaining approximately 1,350 acres in the block. That defendant drilled the well to approximately 1,830 feet and abandoned it without excuse or notice to plaintiff, thereby breaching the contract, for which plaintiff claimed damages in the sum of $14,500, that being the reasonable and necessary expense to complete the well to the contract depth, and special damages in the sum of $9,000, resulting to him in loss and depreciation of the values of the leases retained by him, when the breach occurred. Other special damages were claimed, but there seems to be no grounds raised in the record for a recovery thereunder, and no complaint is made on this appeal, of such failure to recover.

The defendant answered with a plea in abatement, in which he pointed out that necessary parties were not before the

court, in the persons of the several land owners from whom plaintiff had leased the land, alleging they were joint owners with plaintiff and entitled to a share of any damages recoverable for the breach of the contract. General demurrer and special exceptions were filed. Special exceptions 6 and 7 were leveled at that part of the petition which sought a recovery for the amount necessary to drill the well to the contract depth. Subject to the plea in abatement and his demurrers, defendant answered with general denial and special pleas, that plaintiff had induced him to enter into the contract by fraud, consisting of a representation to defendant that he could drill the well for $4,000, and could sell enough leases out of those to be assigned to him to defray the expense; that plaintiff had withheld from defendant the fact that a dry hole had been drilled on an adjoining tract of land to that upon which this well was to be drilled; that plaintiff withheld from defendant the fact that he held about 3,000 acres in leases instead of the 2,335, as represented; that said acts were fraudulently done and but for which defendant would not have made the contract. Further answer was made that under the terms of the contract, said Waite was to have management and control of the drilling of the well and that at the depth the well was abandoned the said Waite advised defendant they had encountered Ellenberger Wash, which is immediately above the Ellenberger Lime, and that it was impracticable to drill the well any deeper, and for that reason it was abandoned, and the contract was fully performed by defendant. It was further alleged in said answer that under no condition had plaintiff suffered any damages on account of any act of defendant's, because there was no reasonable expectation that oil or gas would be discovered on said premises, if the well had been drilled to the maximum depth agreed upon. Defendant tendered a return of all leases assigned to him by plaintiff.

The court overruled the plea in abatement and the demurrers of all parties. We think special exceptions Nos. 6 and 7, above mentioned, should have been sustained, but since no recovery was had upon the items referred to, it becomes unimportant, except insofar as plaintiff has complained by cross assignments of error, because the court did not give a summary charge and render judgment for him thereon; this we shall discuss later in this opinion.

The case was tried to a jury, and the verdict is indicated by the following findings: (1) The reasonable expense necessary to finish the well from the depth drilled by defendant to 3,500 feet would be $22,000. (2) In drilling the well, defendant did not encounter Ellenberger Lime or other impenetrable substance. (3) Plaintiff owned leases out of the 2,300 acre block when the well was abandoned. (We think evidently the inquiry was intended to ascertain if he owned any leases outside the block.) Special Issue No. 4 reads: "What do you find from a preponderance of the evidence was the reasonable cash market value of plaintiff's leases in said block before the well was abandoned? Answer giving amount in dollars and cents." The answer was: "4 x 1370 acres, $8,220.00". (5) The value of plaintiff's leases in the block after the well was abandoned was $1,370. (6) If the well had been drilled 3,500 feet or until it struck Ellenberger Lime or other impenetrable substance, plaintiff's leases would have been worthless. (7) Waite advised defendant that Ellenberger Lime had been encountered at the time he abandoned the well. (8) The Ellenberger Lime would not have been encountered had the well been drilled 3,500 feet. (Issue No. 9 was a conditional one and was not answered.) (10) The well could not have been drilled to a depth of 3,500 feet from the bottom of the hole in the condition it was in when defendant abandoned it. (11) The reasonable expense in drilling a well on the Thetford tract from the surface to a depth of 3,500 feet was $15,000. (12) Plaintiff disclosed to defendant that a dry hole had been drilled on the tract adjacent to the Thetford land.

Judgment was entered in favor of plaintiff for $4,588.75. Both parties filed motions for new trials, which were overruled, and each excepted and gave notice of appeal, and have perfected appeals by writs of error; these have been consolidated by us.

For convenience, we shall continue to refer to the parties as plaintiff and defendant, respectively, as they were designated in the trial court.

The defendant relies upon several propositions based upon assignments of error, which, in substance, are as follows: (1) Because the court overruled his plea in abatement, wherein the matter of new parties was raised. (2) The court should have

given him an instructed verdict, because the evidence showed that if the well had been drilled to its contract depth no oil or gas would have been found. (3) Because the court submitted to the jury an erroneous measure of damages when he inquired by special issues as to the reasonable expense necessary to finish the well begun and abandoned by defendant. (4) Because the court should not have rendered judgment for plaintiff for any sum on account of depreciated values of plaintiff's leases occasioned by the abandonment of the well by defendant. Other points are raised challenging the sufficiency of the evidence to warrant the submission of an issue on the points raised.

Plaintiff assigns error to the actions of the trial court, they being presented in many forms, but may be grouped for discussion here, as (a) Because the court did not render judgment in favor of plaintiff for the amount necessary to drill the well, or to finish the one started by defendant. (b) Because the court deducted certain amounts from the aggregate sum found by the jury to have been the difference in the values of plaintiff's leases before and after the abandonment of the well by defendant. And (c) because the court should have set aside the judgment as entered and rendered judgment for plaintiff for the entire sum shown to be the reasonable expense of drilling the well together with the depreciated values of plaintiff's leases.

Some difficulty confronts us in disposing of these propositions, without unnecessarily prolonging this discussion.

There is nothing in the record before us from which we may determine the nature of the contracts made between plaintiff and the several land owners. It would be idle to speculate upon this point. The evidence shows there were written contracts between plaintiff and the landowners, but none of them were before the court; oral testimony made remote references to them; at one time plaintiff testified that he agreed with the lessors to drill a well on the block 3,500 feet deep or to production or Ellenberger Lime at a lesser depth, but "that the contract had a forfeiture clause in it, like all of them"; this last expression could mean many things that would affect the lessors' right to recover damages. It is certain the record does not disclose that any of the landowners, whom defendant sought to have made parties, had a common interest with plaintiff in the leases retained by him when he dealt with defendant; it was for the depreciation of these leases that plaintiff was permitted to recover in special damages. Neither plaintiff or the landowners could recover the expense of drilling a well from defendant under the conditions surrounding this case, and the landowners having no interest in the special damages claimed by plaintiff, they were not proper parties to a suit in which that item was being litigated. There was no error committed by overruling the plea.

It is appropriate to here discuss plaintiff's assignments that the court erred in, not rendering judgment for him for the amount found by the jury to be the reasonable and necessary expense in drilling the well, and defendant's assignments complaining that issues were submitted to the jury, inquiring as to such sums.

The court did submit such issues and they were answered as above shown. It will be noted that in answer to the first special issue it was found the expense of finishing the hole abandoned by defendant would be $22,000, while in response to the eleventh issue it was found that $15,000 would be required to drill a well from the surface to the contract depth. The evidence discloses however that because of the condition of the well drilled by defendant it would be more expensive to finish it than to drill another from the surface.

It seems to be the well settled rule of law in this state that the measure of damages for the breach of a contract to drill a well in prospect for oil and gas is not the necessary expense of either finishing a well once begun, nor the drilling of one from the surface to the bottom when nothing had been done towards the performance of the contract. The true measure of damages, it seems, is the loss of royalties to the lessor. This general rule of course is controlled by conditions surrounding each case. Guardian Trust Co. v. Brothers, Tex.Civ.App., 59 S.W.2d 343, writ of error refused; Texas Pacific Coal & Oil Co. v. Barker, 117 Tex. 418, 6 S.W. 2d 1031, 60 A.L.R. 936; Gwynn v. Wisdom, 119 Tex. 320, 30 S.W.2d 298.

This court, in case of Owens v. Fain-McGaha Oil Corp., 98 S.W.2d 1014, held that in unproven, or what is sometimes called "wildcat" territory, in a contract between the landowner and a lessee who obligated himself to drill a well to a specified depth, upon failure to drill, the measure of

damages was the amount necessary to drill the well. That case reached us on appeal from a ruling of the trial court in which a general demurrer was sustained to the petition, and we held the allegations were sufficient as against the demurrer to entitle the plaintiff to make the proof of that necessary expense. In that case we said, however [page 1016]: "We are fully aware of the fact that a complete answer to appellant's alleged cause of action would be the pleading and proving by proper testimony that there was no reasonable expectation of finding oil or gas in paying quantities on appellant's lands. But this is a matter of defense, and, we hold, cannot be reached by a general demurrer." A writ of error has been granted by the Supreme Court in the last mentioned case, upon an assignment challenging our statement of the measure of damages. That writ is at this time undisposed of. The writ was granted on an assignment of error which contained this statement: "* * * It being the established law, as decided by the above cases (those cited by us above), that the measure of damages for the failure to drill a well in undeveloped territory is the value of the royalties contemplated and which would probably have been secured had the test been made."

In answer to the sixth special issue the jury found that if the well had been drilled 3,500 feet deep as contemplated by the contract, plaintiff's leases would then have been worthless. We construe this to mean that the jury in effect found that if the well had been completed no oil or gas in commercial quantities would have been found. Under the rule announced by the Supreme Court as to the measure of damages in such cases, as above shown, even if the well had been drilled as contracted for, plaintiff would have had nothing of value in his leases, and therefore cannot recover for a breach of a contract that would have been of no benefit to him. It follows that plaintiff cannot successfully urge as error the refusal of the court to enter judgment in his favor for the amount shown to be necessary to drill the well. It is equally true that the trial court should have sustained defendant's special exceptions to those parts of the petition which sought a recovery for the amount necessary to drill the well; nor should those issues have been submitted to the jury; it was the wrong measure of damages; the answers furnished no information necessary for a judgment, they were unnecessary and immaterial. The trial court ignored these issues and their answers in entering the judgment. In this he was correct, and defendant has therefore suffered no injury to his defense; the errors in overruling the exceptions and in submitting the issues proved harmless to defendant, and his complaint concerning them must be overruled.

Plaintiff alleged in his petition an item of special damages as a result of the failure of defendant to carry out the contract of drilling. He alleged that he assembled this block of acreage at a heavy expense, and that such leases became valuable when so blocked and especially when a contract was let to drill a well thereon; that when defendant contracted to drill an exploratory well for oil and gas on said acreage, the leases held by plaintiff thereby became worth from $6 to $20 per acre, dependent upon their proximity to the well; that when defendant breached his contract said leases became valueless, and plaintiff sustained special damages in the sum of $9,000 because of depreciated values in his said leases on account of the failure of defendant to carry out his contract. It was upon this phase of the case that judgment was entered for plaintiff in the sum of $4,588.75. The amount of the judgment so entered is also the object of complaints by both plaintiff and defendant; the latter contends no such damages are recoverable under the pleadings, and moreover the evidence did not justify the submission of such an issue, nor did the evidence support the answer. The plaintiff complains because the court did not render judgment for $6,850, the difference as shown by the verdict, in the value of his leases before and after the breach of the contract. It is contended by plaintiff that acreage sold by him was situated outside the 1,370 acres retained by him when he assigned the 1,030 acres to defendant. There is some testimony given by plaintiff which would tend to support the claim; but we find also other testimony both by the plaintiff and by the depositions of other witnesses who said they bought the acreage after the contract was let to defendant. By the judgment, the court found, as based on the verdict of the jury, that plaintiff's leases prior to the time the contract was breached were worth $6 per acre, but that he had sold off to various parties 376½ acres leaving him 993⅛ acres worth $6 per acre or $5,958.75; from this the court deducted $1,370, the amount the jury found

to be the value of his leases after the contract was breached, leaving plaintiff's damages at the amount for which he rendered judgment.

■ We think the petition plead a cause of action for the special damages and that there was sufficient testimony of probative force to support the verdict on the point, and defendant's objections thereto must be overruled. The record before us is somewhat vague and confusing as to the locations of tracts sold by plaintiff. We note there are references by witnesses to tracts pointed out while on the stand but by this we are left in the dark as to whether the tracts conveyed were contained in the 1,370 acres retained by plaintiff, while at the same time he claims to have owned several hundred acres of leases "outside" of the block in which defendant was to participate. It further appears that plaintiff sold some leases for around $6 per acre prior to the time he let the contract to defendant; this evidence was offered to show values of that retained; we do not know where such leases were located, but if they were as much as a mile and a half from the Thetford tract in the direction of the Bulcher oil field they would have been closer to production than to the proposed well, and this may have had something to do with the values at which they were sold. It is a further significant fact we think that plaintiff testified many times while on the stand that his leases were worth $5 per acre as soon as he got them assembled and before a contract was let to drill, and yet when the contract was breached to drill, the leases became worthless; those leases assigned to defendant were tendered back to plaintiff and he would again have them in the same block as they were in before he made the contract to drill. The jury however had all these facts before them and found damages as above indicated. There is testimony to support the finding and we are not at liberty to disturb it, nor the judgment entered thereon.

■ Defendant complains by assignments of error that the court did not submit his requested special issues inquiring if plaintiff fraudulently represented to defendant that the well could be drilled for $4,000 and also whether or not the plaintiff fraudulently concealed from defendant that he had under lease about 3,000 acres instead of approximately 2,300 acres. The testimony on the two points is conflicting, but it nowhere appears from the record that either of those alleged wrongful acts caused even remotely, the defendant to abandon the well after he had begun it. Hence we can see no error in the refusal to submit such issues to the jury.

■■ By his eleventh proposition, based on an assignment of error, defendant contends the court should have granted his motion for judgment because V. V. Waite advised him, as found in response to seventh special issue, that the driller of the well had encountered Ellenberger Lime, and therefore the contract was completed. By the terms of the contract as entered into between the parties, Waite was to have general charge and supervision of the drilling operations; Waite was a geologist and had performed professional services in the past for defendant; the assignments of the 1,030 acres of leases were made to Waite for the benefit of defendant; each of the parties contended upon the trial that Waite was the agent of the other; defendant here insists that because Waite, the agent of plaintiff, advised him Ellenberger Lime had been encountered, he was at liberty to declare the contract performed; the jury found that Waite gave this information to defendant. The court did not attempt to inquire by an issue as to whose agent Waite was, nor was there a request by defendant for the submission of that question. The defendant plead as a defense that Waite was in charge of the drilling and had advised him of the presence in the well of the Ellenberger Lime and that he then abandoned further drilling. There is no direct allegation that Waite was the agent of plaintiff, but if it could be said that the allegations meant that, this would have presented a perfect defense to plaintiff's cause of action if proven. Under such conditions it would have been necessary for defendant to have prepared and requested the giving of such an issue, and having failed, he waived that part of his defense. Gulf, C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183. To have given the peremptory instruction as requested would in effect have found the answer to such an issue favorable to defendant. This, the court could not do, and there was no error in refusing the summary instruction on this ground.

We have not discussed all the points raised by the parties but have carefully reviewed them; we have only discussed those

which we think are controlling in the appeal as presented. Finding no error requiring a reversal of the case, the judgment of the trial court is affirmed.